**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BARRY-WEHMILLER DESIGN GROUP, INC.,** | Civil No. 1:14-CV-1074 |
| Plaintiff | (Magistrate Judge Carlson) |
| v. | |
| **STORCON SYSTEMS, INC.** | |
| Defendant/ Third-Party Plaintiff | |
| v. | |
| **IMPERIAL INDUSTRIES, INC., JENICKE & JOHANSON, INC.,** | |
| Third-Party Defendant | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

This action relates to a multi-party dispute that arose following the structural failure of a silo system in York, Pennsylvania. Barry-Wehmiller Design Group, Inc. ("Barry-Wehmiller") was retained as a construction manager and consultant by Church & Dwight, a non-party, to erect a new 300-ton capacity limestone silo at

Church & Dwight's facility in York.  On or about July 22, 2013, the silo failed, and inspired this litigation.

On June 3, 2014, Barry-Wehmiller filed breach of warranty claims against StorCon Systems, Inc. ("StorCon"), which had been engaged to complete the design, manufacture and installation of the silo. (Doc. 1.) StorCon, in turn, filed a third-party complaint naming Imperial Industries, Inc. ("Imperial") and Jenicke & Johanson, Inc. ("J&J") as third-party defendants.  (Doc. 7.)  StorCon had hired Imperial to complete the actual design, fabrication and installation of the silo.  The third-party complaint asserted claims for breach of contract, indemnity and contribution against Imperial, and it asserted a negligent misrepresentation claim against J&J, which had been hired by Church & Dwight – not StorCon or Imperial – to prepare the functional design specifications and material-induced load calculations.  StorCon and Imperial allegedly used J&J's recommendations in connection with the structural design and fabrication of the silo.  As will be discussed, StorCon's third-party complaint against J&J has since been dismissed with prejudice.

Now pending in this action is a motion for sanctions that J&J has filed against StorCon.  J&J brings this motion pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that StorCon filed its third-party complaint against J&J without any factual basis, and because StorCon's counsel violated Rule 11 "by falsely

certifying to the Court that, to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the factual contentions related to Storcon's negligent misrepresentation claim (Count III of the Third-Party Complaint) had or potentially could have evidentiary support." (Doc. 53.) For its part, StorCon flatly disputes J&J's arguments and legal conclusions, arguing that there was a good-faith factual basis to allege that StorCon detrimentally relied upon J&J's inspection of the silo system, and its related reports, in the construction of the silo. J&J has filed a reply brief, continuing its attack on opposing counsel's alleged lack of inquiry into what J&J insists are the facts of this dispute before bringing the third-party claims.

Upon consideration, we find that StorCon has pointed to numerous, arguably legitimate bases for bringing the third-party claims in this case, and despite J&J's insistence to the contrary we find that this case falls far short of what Rule 11 demands before sanctions may be imposed. Instead, this seems a case where J&J is making good on the threat it made last fall when it insisted that if StorCon did not accede to its demand that it withdraw all claims with prejudice immediately, J&J would pursue Rule 11 sanctions. And J&J insists on bringing this motion, and pursuing sanctions, after the district court initially dismissed StorCon's negligent misrepresentation claim *without prejudice* (which is precisely what StorCon agreed

to in its brief). StorCon elected not to file an amended complaint within 20 days, which is the time period that the Court allotted. The fact that the case was dismissed with prejudice had nothing to do with the legal theories alleged, or the potential factual support for the claims; instead, it had only to do with the fact that StorCon declined to file an amended complaint within the 20 days that the court prescribed for amendment of pleadings.

Despite the absence of an amended complaint, J&J nevertheless persisted with its threats to StorCon's counsel, demanding that he withdraw his client's negligent misrepresentation claim with prejudice or face the specter of sanctions motions. When StorCon's counsel did not comply with these demands, and maintained that the dismissal should simply remain without prejudice as the district court had ordered (upon StorCon's lack of opposition), J&J filed its motion to dismiss the third-party complaint with prejudice. StorCon opposed the motion, but only insofar as it concerned the form of the dismissal, with StorCon continuing to argue that the dismissal was appropriately entered without prejudice in case.

The district court observed that it had given StorCon 20 days to amend, and had expressly advised that if StorCon failed to amend its claim within this period of time, that J&J could renew its motion to have the claims dismissed with prejudice. (Doc. 37, at 5.) The district court did not make any findings to indicate that

StorCon's third-party complaint was baseless; it simply dismissed the action with prejudice because that is what it found the circumstances dictated after StorCon declined to file an amended complaint. Moreover, although the district court dismissed the negligent misrepresentation claim with prejudice, the court expressly left the door open to any party rejoining J&J to the action "[i]f warranted by discovery . . . by asserting different claims." (Doc. 50, at 5.)

J&J argues that the evidence that StorCon had in its possession made clear that the negligent misrepresentation claim was baseless, and the fact that StorCon knew it did not rely on J&J's specifications in the construction of the silo compel a finding that sanctions are warranted. J&J also faults StorCon for arguing the merits of the action in its opposition to the sanctions motion, but we find no fault with what StorCon has done in its defense, which as we understand it is to detail some of the numerous reasons why its counsel was initially satisfied that bringing a third-party complaint to protect his client's interests in this litigation was justifiable, and an appropriate step to ensure that StorCon did not forfeit a potential claim in a dispute where liability and respective fault was potentially complex and likely contested. Furthermore, as we will emphasize further, StorCon's conduct in acceding to dismissal without prejudice – and in arguing that its right to bring claims in the future

5

should be preserved – are not sanctionable under the facts of this case. These reasons persuade us that the motion should be denied.

## II.   BACKGROUND

In late 2012 and into 2013, Barry-Wehmiller contacted StorCon about supplying a silo system that would be operated by Dwight & Church to accommodate bentonite and limestone used in connection with the company's production of cat litter. StorCon's role was as a sales representative generating business for Imperial (Doc. 55, Ex. 1), and StorCon issued purchase orders to Imperial for the construction of the silo system.

At or around this same time, Church & Dwight retained J&J to serve as a consultant with respect to the silo project. As part of this work, J&J "generated design recommendations and load calculations for the binsert, cone-in-cone insert, to be constructed as part of the silo system." (Doc. 55; id., ex. 2, at STOR00032 to 41.) As part of its work on the project, J&J conducted inspection of the silo system and the project site. (Doc. 55, Exs. 3, 4, 19.)

In January 2013, J&J had expressed some concern about the beams supporting the insert, which later failed, but nevertheless authorized the parties to proceed "with the functional design of the 300 ton limestone bin." (Id., Ex. 5, BW00082 to 83.) On January 8, 2013, J&J circulated a draft design drawing, which was based upon

support for a bulk density of 90 pounds per cubic foot (pcf). Under the "Design characteristics," the notes specified "Bulk density: 90 pcf (for capacity only)." (Id., Ex. 6, at BW00029.)

On January 23, 2013, J&J issued Report 11291-2, which reaffirmed the 90 pcf density specification. (Doc. 55, Ex. 10, at BW00056 to 64.) According to StorCon, it relied upon this report and issued a final purchase order on January 29, 2013, containing the material characteristic of 90 pcf. (Doc 55, Ex. 11.) The purchase order noted that the fabrication time would be approximately 8 to 10 weeks. (Doc. 55, Ex. 11, at 3.)

J&J later revised its load recommendations on the project to125 pcf. Barry-Wehmiller did not receive this report until February 18, 2013. (Doc. 55, Ex. 12, BW0001 to 02.) The date of receipt was, therefore, after StorCon had already issued the final purchase order for the 300-ton bin BN-220. (Doc. 55, Ex. 11.)

StorCon represents that it is unclear when Imperial may have been notified of the revised load specifications, and Barry-Wehmiller has questioned wether the notice was timely. (Doc. 55, Ex. 14, at BW-01822.) Imperial's President and General Manager has asserted that J&J's revised recommendation was not communicated in a timely manner, and was received too late to be incorporated into the project. Thus, bin BN-220 was fabricated based upon J&J's Report 11291-2 and not 11291-3.

Furthermore, StorCon notes that for reasons unclear, J&J's representative inspected the 300-ton bin for compliance with Report 11291-2 (which specified 90 pcf) and not Report 11291-3 (which specified 125 pcf). (Doc. 55, Ex. 19, at 5.) Thus, in its report J&J stated that its representative "visited Imperial Industries in Rothschild, WI [on February 25, 2013] to inspect bin BN-220 mid-fabrication." (Id.) J&J further stated that "[t]he purpose of the inspection was to determine whether the bin was being fabricated in a manner that was intended, as given by our recommendation (J&J report 11291-2 dated January 21, 2013)." (Id.)

According to StorCon, it relied upon the inspections and recommendations provided by J&J, and maintains that if the bin had not been constructed in accordance with J&J's specifications, it was incumbent upon J&J to alert StorCon – something that never happened. Instead, J&J approved the 300-ton bin during an inspection at which StorCon was not present, and the bin was shipped to the project site in York, Pennsylvania. (Doc. 55, at 8; id., Exs. 13, 16.)

On or about July 22, 2013, the silo system suffered a structural failure after it had begun operations. StorCon has noted that a Barry-Wehmiller representative had indicated that J&J's actions may have had a role in the failure, observing that "[w]e have a 3rd party engineering firm contributing to the situation" and that there had

been "conflicting specifications swapping hands" during the project. (Doc. 55, Ex. 17, at BW01910.)

### III. **PROCEDURAL HISTORY**

On or around November 22, 2013, Barry-Wehmiller contacted StorCon and demanded reimbursement for damages that it had allegedly suffered in connection with the silo failure. On June 3, 2013, Barry-Wehmiller commenced this action against StorCon. (Doc. 1.) StorCon, in turn, filed a third-party complaint against Imperial and J&J on August 5, 2014. (Doc. 7.) J&J moved to dismiss on September 29, 2014. (Doc. 23.) StorCon did not oppose dismissal without prejudice, which was the only position it too in opposing the motion – and, indeed, seems to have been the only position it has maintained since J&J filed its motion. (Doc. 34.)

On December 1, 2014, the district court entered an order dismissing StorCon's claim against J&J for detrimental reliance without prejudice. (Doc. 38.) That order allowed StorCon 20 days to amend its pleading. StorCon elected not to amend, but J&J, seeking finality, renewed its motion to dismiss with prejudice on January 15, 2015. (Doc. 43.) StorCon, again, opposed the motion, but only to challenge the effect of dismissal. (Doc. 45.) On March 2, 2015, the district court observed that StorCon had not amended its pleading within the time that had been given, and entered an order dismissing the detrimental reliance claim against J&J with prejudice.

9

(Doc. 50.) On March 18, 2015, J&J filed the instant motion for sanctions that is the subject of this opinion. (Doc. 52.) The motion is fully briefed and ripe for disposition.

## IV. **DISCUSSION**

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part:

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name . . . . By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . . If, after notice and a reasonable opportunity to respond, the court determines that Rule 11[] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11. "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991) (citations and quotation marks omitted). Thus, parties are advised that they "misuse [Rule 11] when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a rule or judgment . . . Substantially more is required."

Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3d Cir. 1988) (citation omitted). Thus, Rule 11's "primary purpose is not 'wholesale fee shifting but [rather] correction of litigation abuse.'" Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010) (quoting Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1994)). Accordingly, it "must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute," and it "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988) (citation omitted). "Avoiding the wisdom of hindsight, courts must judge the signer's conduct by what was reasonable to believe at the time the pleading, motion or other paper was submitted." Martin v. Brown, 151 F.R.D. 580, 585 (W.D. Pa. 1993) (citation and quotation marks omitted).

In the third-party complaint, StorCon alleged that it justifiably relied on J&J's design recommendations and calculations in supplying purchase orders and information to Imperial and Barry-Wehmiller during the course of the project. J&J argues that "Storcon and its attorneys should have known (through a simple conversation) that there was no factual basis to plead detrimental reliance." (Doc. 53, at 2) (original emphasis.) J&J insists that sanctions are appropriate and warranted

because StorCon knew, and its counsel should have known, that StorCon never used or relied upon J&J's load calculations. StorCon, however, has responded by pointing to numerous pieces of evidence that it contends make clear that StorCon and its attorney initially had a factual basis to bring a claim for detrimental reliance. J&J argues that StorCon and its lawyer continue to present arguments that are unfounded, and suggest that it is inappropriate for StorCon to "argue the factual merits of its claim at this late sanctions phase . . . ." (Doc. 58, at 3.)

J&J also argues that it is StorCon's lawyer who is making a number of "myopic assumptions," (id. at 2), but it is J&J that has demonstrated a distorted perspective here, and about the appropriateness of a sanctions motion. Indeed, J&J's narrow focus on the issue of sanctions "at this late . . . phase" has served only to prolong the parties' entanglement, months after StorCon essentially concurred in J&J's motion to dismiss the claims without prejudice. Although J&J intimates that StorCon should not have addressed any factual matters relevant to the merits of the claims in this case as part of its defense to the motion, we disagree, and find that StorCon's citation to these documents provides a glimpse of why sanctions are inappropriate in this case, which involved an engineering failure, and a quest by parties to determine where blame for that failure should be focused and, if necessary, apportioned. StorCon maintains that the documents attached as exhibits to its brief demonstrate the

because StorCon knew, and its counsel should have known, that StorCon never used or relied upon J&J's load calculations. StorCon, however, has responded by pointing to numerous pieces of evidence that it contends make clear that StorCon and its attorney initially had a factual basis to bring a claim for detrimental reliance. J&J argues that StorCon and its lawyer continue to present arguments that are unfounded, and suggest that it is inappropriate for StorCon to "argue the factual merits of its claim at this late sanctions phase . . . ." (Doc. 58, at 3.)

J&J also argues that it is StorCon's lawyer who is making a number of "myopic assumptions," (id. at 2), but it is J&J that has demonstrated a distorted perspective here, and about the appropriateness of a sanctions motion. Indeed, J&J's narrow focus on the issue of sanctions "at this late . . . phase" has served only to prolong the parties' entanglement, months after StorCon essentially concurred in J&J's motion to dismiss the claims without prejudice. Although J&J intimates that StorCon should not have addressed any factual matters relevant to the merits of the claims in this case as part of its defense to the motion, we disagree, and find that StorCon's citation to these documents provides a glimpse of why sanctions are inappropriate in this case, which involved an engineering failure, and a quest by parties to determine where blame for that failure should be focused and, if necessary, apportioned. StorCon maintains that the documents attached as exhibits to its brief demonstrate the

reasonableness of its allegations that it relied upon some of the design specifications that J&J had included in at least early versions of its design recommendations. Thus, StorCon notes that its reliance on J&J's design recommendations was not limited to reports, but was also based on the fact that a J&J representative inspected and approved the bin, which StorCon alleges J&J designed, and which later failed. (Doc. 55, Ex. 3 at BW01601; Ex. 16 at BW00467; Ex. 19 at p. 5 of 10.) StorCon maintains that it was permissible for it to have relied upon J&J's inspection and approval of a bin that it designed.

Thus, in Report 11291-10, J&J acknowledged that its representative "visited Imperial Industries in Rothschild, WI to inspect bin BN-220 mid-fabrication." (Id., Ex. 19 at 5.) The same document indicates that the purpose of the inspection was "to determine whether the bin was being fabricated in a manner that was intended." (Id.) One of the issues in this case, and which apparently contributed to or caused the silo failure, is the fact that the bin was constructed with load specifications of 90 pcf, which was in line with J&J's initial recommendations, which were subsequently revised upward to 125 pcf – a revision that StorCon argues was belated and not communicated timely. According to StorCon, J&J never warned that the bin was improperly constructed or unsafe. It had been constructed in accordance with J&J's design specifications set forth in Report 11291-2. (Doc. 55, Ex. 2.) That report

13

provided the following requirements and recommendations: "Bin capacity of 300 tons, based on a bulk density of 90 pcf (J&J measured a minimum bulk density of 103 pcf for the limestone, in 2010)." (Id., at STOR00035.)  That same report provides that "Our recommended functional design for bin BN-220 is shown in Figure 1." (Id.)  Figure 1 notes "Design characteristics" including "Bulk density:  90 pcf (for capacity only)." (Id., at STOR00041.)

J&J subsequently altered its load recommendations to require a bulk density basis of 125 pcf.  According to StorCon and documents attached to its brief, Imperial's President and General Manager has asserted that J&J's revised recommendations were not communicated to it clearly or timely. (Doc. 55, Ex. 15, at BW01880 to 1881.)  Additionally, Barry-Wehmiller's principals have noted that "there were conflicting specifications swapping hands between the parties (density, etc.)." (Doc. 55, Ex. 17, at BW01910.)  StorCon further observes that even after J&J had revised its recommendations regarding bulk density capacity in Report 11291-3, a J&J representative inspected the 300-ton bin for compliance with Report 11291-2, the draft that called for a 90 pcf basis. (Id., Ex. 19, at 5.)

We are satisfied that the foregoing factual detail is more than sufficient to have justified StorCon and its counsel to initially bring the third-party complaint against J&J.  Moreover, we find nothing at all objectionable – much less sanctionable – with

14

StorCon arguing that dismissal should have been entered without prejudice simply to preserve its potential right to pursue a detrimental reliance claim if further discovery yielded sufficient factual support. StorCon effectively did not oppose the relief that J&J sought back in September 2014. It agreed that its claim against J&J should be dismissed, but reasonably declined to relinquish its potential right to renew its claim, and thus urged the court to dismiss the claim without prejudice. If matters are as J&J insists the are, and no factual discovery could have justified reviving the claim through a later amendment, then J&J's involvement in this lawsuit could have ended in September of last year. Instead, J&J has prolonged this matter, and its involvement, by pressing for greater relief and, now, for sanctions. We find that StorCon's decision to bring the third-party claim was reasonable based on the facts articulated, and we find that StorCon's and its counsel's conduct during the litigation, was both reasonable and appropriate, and we thus find no basis for imposing the sanctions that J&J demands. Rather, we recommend that J&J content itself with the success it has enjoyed thus far in this litigation.

## V.    <u>ORDER</u>

Accordingly, for the foregoing reasons, J&J's motion for sanctions against StorCon (Doc. 52.) is DENIED.

So ordered this 29th day of June 2015.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
